Anthony D. **LUTZ**, Janet Cope, Donna M. Courain, Shareon S. Montague, Cara A.L. Behrens, Wendell L. Choo, and all others similarly situated, Plaintiffs,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant.**

No. C.A. 00–148–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 12, 2000.

---

Raymond J. LaJeunesse, Jr., c/o National Right to Work Legal Defense Foundation, Inc., Springfield, VA, for plaintiffs.

Susan Rebbeca Podolsky, Jenner & Block, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Six nonunion employees of United Airlines bring this action against the International Association of Machinists and Aerospace Workers ("IAM"), claiming that IAM's policy requiring nonmembers of the union to file their objections *annually* to the payment of union fees unrelated to the costs of collective bargaining ("agency fees") violates the nonmembers' rights under the First Amendment and the Railway Labor Act ("RLA"), 45 U.S.C. § 151 (1994). At issue here is plaintiffs' motion to have a class certified comprised of "all nonmembers of Defendant IAM, including new employees ... who are subject to collective bargaining agreements made under the [RLA] that require nonmembers to pay dues or fees to the IAM as a condition of employment." (Complaint ¶ 7.) For the reasons that follow, the motion for class certification is granted.

## I

The named plaintiffs are all employees of United Airlines and are represented by the IAM for collective bargaining purposes. None of the named plaintiffs are members of the IAM and each has filed an objection to the collection of agency fees.

IAM is the exclusive bargaining representative of the approximately 141,500 employees of railway and airline carriers covered by the RLA. Pursuant to the RLA, the IAM must represent all employees, including non-IAM members, in its negotiations with employers. To provide for this representation, the IAM is permitted to collect from nonmembers dues or fees as a condition of employment. In turn, however, nonmembers of the IAM are permitted to object to the payment of any fees attributable to activities unrelated to the costs of collective bargaining, such as political activities. In this regard, the Supreme Court has ruled that nonmembers have a constitutional right to receive adequate notice from unions of (i) the right to object to the payment of agency fees and (ii) the procedures by which nonmembers of unions can file such objections to the collection of fees. *See Chicago Teachers Local v. Hudson*, 475 U.S. 292, 310, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The instant suit is a dispute regarding whether, as plaintiffs have alleged, nonmembers are entitled to file a continuing or permanent objection to the payment of agency fees, or whether, as IAM contends, nonmembers can be required to file their objections on an annual basis.

The IAM publishes annually a "Notice to Employees Subject to Union Security Clauses" ("Notice"). This Notice is published in the *IAM Journal* and distributed to all employees the IAM represents; it explains the procedure nonmembers must follow to object to the collection of agency fees and thereby pay a reduced union fee in the next calendar year. Under the objection procedure, nonmembers are required to file their objections on an annual basis and are not permitted to file a continuing or standing objection.

Plaintiffs argue that the denial of the right to file a continuing objection is a violation of their First Amendment rights to "freedom of speech, association, petition, belief, and thought" as well as a violation of the statutory duty of fair representation guaranteed by the RLA. As remedies, plaintiffs seek (1) a declaratory judgment that the annual objection requirement violates the First Amendment and the RLA, (2) a permanent injunction to enjoin the IAM from requiring annual objections and from collecting the full fees from those plaintiffs who filed continuing objections with the IAM, (3) nominal damages for the violation of plaintiffs' constitutional and statutory rights, and (4) compensatory damages for the return of fees to those individuals whose continuing objections were not recognized and of the cost to renew their annual objection for those nonmembers who were required to do so.

The named plaintiffs in this case are employees of United Airlines who are represented by the IAM for collective bargaining purposes. None is a member of the IAM. In June 1999, all of the named plaintiffs submitted objections to the payment of agency fees. All but one of the named plaintiffs stated in their objections that the objections were continuing in nature and applied to all subsequent years. The IAM did not recognize these continuing objections because they were not in accordance with IAM procedures, and these named plaintiffs were therefore charged the full agency fee in November 2000. The remaining named plaintiff filed only a standard objection that did not include notice that it was a continuing objection. In November 1999, however, when she filed her next annual objection, she stated that this objection was continuing in nature and applied to all subsequent years.

The proposed class includes all non-IAM members, who are nonetheless represented by the IAM under the RLA. This group numbers approximately 1,039.[1] Of this number, approximately 315 nonmembers have filed objections to the payment of full agency fees during the year 2000. Of that number,

---

1. The total number of employees represented by the IAM, including its members, is much larger, totaling approximately 141,500.

roughly 26 nonmembers indicated that their objections were to be continuing. The named plaintiffs claim that they fairly and adequately represent all nonmembers because all nonmembers have a right to receive adequate notice of their right to object and of the opportunity to exercise that right. Defendants argue, however, that because the vast majority of the proposed class not only did not file a continuing objection, but did not object at all, the named plaintiffs cannot claim to have suffered the same injury as the non-objecting non-IAM members and hence the named plaintiffs do not share the same interests as the proposed class.

## II

The two-step procedure for determining whether a class should be certified is found in Fed.R.Civ.P. 23. In the first step, the party advocating class certification must show that the action satisfies the four requirements of subsection (a) of the Rule, which are: (1) that the class is so numerous that joinder of all members of the class is impracticable; (2) that questions of law or fact are common to the class; (3) the claims or defenses of the representative party are typical of those of the class; and (4) the representative parties fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). In the event that the party seeking class certification meets all of the step one requirements, the second step of the certification procedure requires that the party advocating certification show that the action fits within any one of the three categories of actions identified in Rule 23(b). The first category consists of actions in which individual adjudication of the controversy would prejudice either the party opposing the class or the class members themselves. *See* Fed.R.Civ.P. 23(b)(1). The second covers suits that are primarily injunctive or declaratory in nature. *See* Fed.R.Civ.P. 23(b)(2). Finally, subsection (b)(3) defines a category of suits where common issues of law or fact exist and the class action device has superiority over any other available procedure for disposing of the controversy. *See* Fed.R.Civ.P. 23(b)(3).

■ Importantly, in considering a motion for class certification, courts must determine "only whether the requirements of Rule 23 have been satisfied and may not consider the merits of plaintiffs' claim." *Carpenters Local 899 v. Phoenix Assocs.*, 152 F.R.D. 518, 521 (S.D.W.Va.1994) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Furthermore, for purposes of a certification motion, "a court must assume the truth of the complaint's allegations." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 n. 2 (D.Md.1998); *see also In re Life USA Holding Inc.*, 190 F.R.D. 359, 364 (E.D.Pa.2000). Thus, in ruling on this class certification question, a court expresses no opinion on the merits of the claims asserted.

### A.  Rule 23(a) Requirements

#### 1.  *Numerosity*

■ A class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). While impracticability of joinder is not determined by a specific number of claimants, it is well-settled that a class exceeding one-thousand members is too large for the practical participation by each individual member. *See Chisolm v. Tran-South Fin. Corp.*, 184 F.R.D. 556, 561 (E.D.Va.1999); *George v. Baltimore City Pub. Schs.*, 117 F.R.D. 368, 370 (D.Md.1987) ("Plaintiffs' proposed class exceeds one thousand members, which clearly makes joinder of all members impracticable."). Because the proposed class includes approximately 1,039 nonmembers of the IAM, the numerosity requirement of Rule 23(a)(1) is met.

In fact, IAM does not contest the numerosity prong. The parties agree that the proposed class of union nonmembers is readily identifiable and that it includes approximately 1,039 nonmembers. Instead, the IAM argues that only 26 nonmembers of the union comprise the class when the typicality and commonality requirements are applied to the instant facts. Because this argument fails, it is unnecessary to reach the question whether a class of 26 would satisfy the numerosity prong.

### 2. *Commonality and Typicality*

The second and third requirements under Rule 23(a) are that "there are questions of law or fact common to the class," Fed. R.Civ.P. 23(a)(2), and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed.R.Civ.P. 23(a)(3). As the Fourth Circuit has recognized, these two requirements " 'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining whether ... the named plaintiff[s'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 (4th Cir.1998) (quoting *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Accordingly, these two factors will be considered together.

The essence of the parties' dispute on these factors is whether the named plaintiffs—nonmembers who have filed objections to the payment of full dues—are suitable representatives for the greater number of nonmembers who have not objected to the full agency dues. The IAM argues that those nonmembers who have not objected—let alone sought a continuing objection—have not been injured by the IAM's annual renewal requirement and, therefore, share no claims or interests with the named plaintiffs. The crux of IAM's argument is that the annual renewal requirement has no effect on the ability to object in the first instance. Thus, only those nonmembers who have sought permanent objections can be at all injured by the annual objection policy. *See East Texas Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (internal quotation omitted) (denying class certification because the named plaintiffs and the remainder of the class do not "possess the same interest and suffer the same injury as the class members"). This argument misconceives the typicality and commonality requirements and is ultimately unpersuasive.

To begin with, the fact that the factual circumstances of the various class members vary is no bar to certification of this class; certification does not require that *all* questions of law or fact be common. To the contrary, "[f]actual differences among the class members' cases will not preclude class certification if the class members share the same legal theory." *Peoples,* 179 F.R.D. at 498 (citations omitted). Because "the possible deprivation of [an] opportunity occasioned by the [annual objection policy] is a question ... common to all members of the proposed class," Rule 23(a) can still be satisfied even if individual class members may have suffered differently from the policy.[2] *Carpenters Local 899,* 152 F.R.D. at 522; *see also Cottrell v. Virginia Elec. & Power Co.,* 62 F.R.D. 516, 519–20 (E.D.Va.1974) (holding that commonality of interest exists where the issue is whether due process requires that a class of persons be offered an "opportunity for a hearing," irrespective of whether all members of the class desire a hearing). In short, it is no bar to certification that some of the proposed class members have registered objections while others have not; what matters is whether all class members share an interest in the same outcome, which they do here. In fact, the proposed class members share an interest in both the procedural right to proper notice of their ability to file a continuing objection and the substantive fight to make such an objection. That the procedural right is an interest shared by all class members is without question. All class members share an interest in "requiring the Union to fully inform them of their objection rights so they can decide whether to exercise them." *Abrams v. Communications Workers of Am.,* 59 F.3d 1373, 1378 (C.A.D.C. 1995). Under *Hudson* and the many cases applying its principles, all proposed class members are entitled to relief, where, as here, there is allegedly faulty notice of how to exercise one's substantive right to object. This is so because all proposed class members suffer an injury "by having to make the

**2.** For instance, the members of the class may have different compensatory damages claims. However, they all share an interest in the claims for declaratory and injunctive relief. Differences in the measure of damages do not preclude class certification. *See, e.g., Health Plan of the Upper Ohio Valley Inc. v. DeGarmo,* 1996 WL 780508, at *5 (N.D.W.Va. Oct.28, 1996).

decision to object or not object based on unlawful and inadequate notice of their rights." *Abrams v. Communications Workers*, 23 F.Supp.2d 47, 51 (D.D.C.1998), *aff'd in part, rev'd in part*, 59 F.3d 1373 (C.A.D.C. 1995); *see also Friedman v. California State Employees Ass'n*, 163 L.R.R.M. (BNA) 2924, 2927–28 (E.D.Cal.2000); *Murray v. Local 2620, AFSCME*, 192 F.R.D. 629 (N.D.Cal. 2000). While it is true that the majority of proposed class members has not yet objected to the payment of full agency fees, it cannot be assumed that those nonmembers who have not objected have no interest in the availability of the continuing objection procedure.[3] Because the current procedure requires all nonmembers to object annually, both current objectors and non-objectors are best viewed as "potential objectors." *See Abrams*, 59 F.3d at 1378 & n. 4 ("It is irrelevant to the notice issue whether an agency employee later becomes an "actual" objector or remains a potential objector since the union must provide notice in advance of an employee's decision to object."). Put another way, the absence of an objection is ambiguous in the face of a faulty notice that requires nonmembers to register their objections annually. Some nonmembers, for example, may have chosen to withhold an objection because they felt intimidated by the annual renewal requirement. Were these nonmembers to receive notice of a right to file a continuing objection, it is possible they would avail themselves of this less intimidating and burdensome option.

■ Despite IAM's argument to the contrary, plaintiffs have adequately pled a challenge both to the adequacy of the notice procedure, as well as to the substantive right to make a continuing objection.[4] Indeed, proper notice to the class is one of the principal remedies sought in the complaint. (Complaint ¶¶ 52(A)–(D)). Of course, the accuracy of notice concerning the right to object and the substantive contours of that right are inextricably related, and plaintiffs address both in their complaint and arguments.[5] The right, by itself, is ineffectual without notice of how to exercise that right. Any ruling that nonmembers have the substantive right to file continuing objections would require a concurrent ruling that the IAM's notice was inadequate as to all nonmembers, i.e., the proposed class members, and not just to those who filed permanent objections. The interest in accurate notice is shared by the entire class of nonmembers—whether objectors or not—and thus, plaintiffs have satisfied the commonality and typicality prongs of Rule 23(a).

### 3. *Adequacy of Representation*

■ The final requirement of Rule 23(a), namely that "the representative parties will

**3.** *See Murray*, 192 F.R.D. at 633 (citing *Lowary v. Lexington Local Bd. of Educ.*, 903 F.2d 422, 430 (6th Cir.1990) and holding that it would be inappropriate to draw any conclusion from the lack of an affirmative objection); *Abrams*, 59 F.3d at 1378 (noting that although "an employee's 'dissent is not to be presumed,' this mandate does not control where the class seeks to vindicate its right to notice, directly affecting whether an employee will become an 'affirmative dissenter' ") (quoting *International Ass'n of Machinists v. Street*, 367 U.S. 740, 774, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)).

**4.** The IAM contends that no court has certified a class of all nonmembers to challenge only the denial of the substantive right to object on a continuing basis. They also contend that none of the cases certify a class of all union nonmembers to challenge the annual renewal requirement, and that one case, *Abrams*, rejected certification on this ground. IAM's reliance on *Abrams* in this fashion is a misreading of the case. The *Abrams* court stated that it "need not consider" whether to certify a class of all potential objec-

tors to challenge the objection procedure because the interests of this subclass was adequately pursued by the certified class. *Abrams*, 59 F.3d at 1378 n. 5. "[N]eed not considers" is a far cry from denial of certification.

**5.** Numerous courts have certified classes of nonmembers of a union who have brought both substantive and procedural claims. *See, e.g., Mitchell v. Los Angeles Unified Sch. Dist.*, 744 F.Supp. 938, 943 (C.D.Cal.1990) (certifying class of all nonmembers as to claims of inadequate verification of *Hudson* notice and seizure of agency fees equal to full dues); *Hohe v. Casey*, 128 F.R.D. 68, 70 (M.D.Pa.1989); *George*, 117 F.R.D. at 371–72 (certifying class of public school teachers to challenge deduction of union representation fees from wages of nonunion employees); *Ellis v. Western Airlines*, 652 F.Supp. 938, 940 (S.D.Cal.1986) (certifying class to challenge procedure by which union assesses and collects agency fees from nonunion employees); *Damiano v. Matish*, 644 F.Supp. 1058, 1059–60 (W.D.Mich.1986), *rev'd in part on other grounds*, 830 F.2d 1363 (6th Cir.1987) (same).

fairly and adequately protect the interests of the class," is met here. Fed.R.Civ.P. 23(a)(4). Adequate representation depends on two factors: (1) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation; and (2) the named plaintiffs must not have interests antagonistic to those of the class. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.1975); *Carpenters Local 899*, 152 F.R.D. at 522.

■ As to the first prong, there is no dispute that the plaintiffs' attorneys are qualified to conduct this litigation.[6] The parties' dispute focuses on the second prong. It is true, of course, as the Fourth Circuit recognized in *Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283 (4th Cir. 1991), that in the context of a labor union, circumstances can exist where the interests of some class members impair their ability to represent the class effectively. Yet, the IAM has offered no evidence that the named plaintiffs here have such an interest, and it is quite plain that *Kidwell's* facts are sharply distinct from the instant facts. In *Kidwell*, the Fourth Circuit recognized that union nonmembers may decline to join a union—or to object to paying full union dues—for divergent, and potentially conflicting, reasons. *See id.* at 305. These divergent aims rendered the named plaintiffs in that case inappropriate representatives of the class. *See id.* ("The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers."). By contrast, no such divergent aims exist among these named plaintiffs and the proposed class. Not all of the class members may ultimately choose to object or

to file a continuing objection, but all class members do have the same interest in knowing the precise contours of their objection rights and in receiving accurate notice of these rights. And, significantly, the remedies sought in the complaint are narrowly tailored to avoid creating any conflict among class members. Thus, the named plaintiffs seek injunctive and declaratory relief to clarify the rights of all nonmembers. While the plaintiffs also seek compensatory and nominal damages, these damages are limited to recovering the expenses paid by those nonmembers required to renew their objections and for the agency fees charged to those nonmembers whose continuing objection was not recognized. This form of relief is far from punitive damages—a remedy arguably employed to punish or financially harm the union. Thus, in contrast to the proposed class in *Kidwell*, the named plaintiffs here can adequately represent the interests of the proposed class, and, accordingly, the plaintiffs have satisfied the requirements of Fed. R.Civ.P. 23(a).[7]

### B. Rule 23(b) Requirements.

■ A suit that satisfies the Rule 23(a) requirements can be certified as a class action only if it also fits within one of the subcategories of Rule 23(b). *See* Rule 23(b), Fed.R.Civ.P. The IAM does not seriously contest certification under Rule 23(b). Its principal argument is that the named plaintiffs are not appropriate class representatives. As this issue has already been addressed in the Rule 23(a) analysis, no further discussion is required here. In any event, there is no doubt that this class action, if certified, fits well within all three categories of Rule 23(b).[8]

---

6. Courts have found that plaintiffs' counsel was capable of representing a class in numerous suits. *See, e.g., Murray*, 192 F.R.D. at 635–36; *George*, 117 F.R.D. at 370–71. Where "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again." *Gomez v. Illinois State Bd.*, 117 F.R.D. 394, 401 (N.D.Ill.1987).

7. *See Broussard*, 155 F.3d at 337 (finding a conflict of interest and therefore rejecting certification because one class had an interest only in maximizing damages while another sought to intervene to oppose damages); *Gilpin v. American Fed'n of State, County, and Mun. Employees*,

875 F.2d 1310 (7th Cir.1989) (finding a serious conflict of interest between named plaintiffs seeking restitution remedy of all fees collected, even though an arbitrator had determined that the union was entitled to collect that amount and possibly more); *Leer v. Wash. Educ. Assoc.*, 172 F.R.D. 439, 447 (W.D.Wa.1997) (finding no risk or financial embarrassment to the union where the proposed class sought declaratory and injunctive relief and did not seek punitive damages).

8. However, if an action qualifies for class certification under Rule 23(b)(1) and/or (b)(2), as well as (b)(3), then it should be certified under (b)(1)

**454**

At issue in this case is whether the IAM is in compliance with its obligations under the RLA and the *Hudson* decision. This is an issue of nationwide consequence, as the IAM represents employees throughout the country. It is clear that without class certification, individual litigation of this issue is fraught with the risk of inconsistent or incompatible standards of conduct for the IAM with respect to the annual renewal requirement.[9] The immediacy of this risk is underscored by *Shea v. International Assoc. of Machinists and Aerospace Workers*, 154 F.3d 508 (5th Cir.1998), where the Fifth Circuit, in an individual action, struck down the annual renewal requirement. The IAM chose not to appeal that decision and has instead announced that, pursuant to *Shea*, it will allow continuing objections to the full fee only within the Fifth Circuit. A class action is precisely what is now needed to provide a nationwide answer to this nationwide question relating to the IAM and the employees it represents nationwide.

Rule 23(b)(2) is also satisfied because the primary goal of this suit is injunctive and declaratory relief.[10] If plaintiffs prevail on the merits, then all nonmembers would be entitled to relief against the enforcement of the annual renewal requirement. *See Abrams*, 59 F.3d at 1378 ("If the Union's notice were found to be inadequate, all workers would be entitled to injunctive and declaratory relief.").[11] Accordingly, certification is appropriate under Rule 23(b)(2), as well.

For all the reasons stated above, plaintiffs' Motion for Class Certification is **GRANTED.**

and/or (b)(2), but not under (b)(3). *See In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir.1989). Accordingly, this action is certified under Rule 23(b)(1) and 23(b)(2).

9. Fed.R.Civ.P. 23(b)(1)(A) states that "[t]he prosecution of separate actions ... would create a risk of inconsistent or varying adjudications with respect to individual members of the class." Class actions have been certified under Rule 23(b)(1)(A) in several other cases challenging a union's failure to provide procedural protections under *Hudson*. *See Murray*, 192 F.R.D. at 636; *Leer*, 172 F.R.D. at 452; *Mitchell*, 744 F.Supp. at 940; *Hohe*, 128 F.R.D. at 70–71.

The Clerk is directed to send a copy of this Order to all counsel of record. An appropriate order will issue.

10. Fed.R.Civ.P. 23(b)(2) states,
"the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class a whole."

11. It is equally clear that questions of law common to all class members "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). However, given the Fourth Circuit's decision in *A.H. Robins*, this action will not be certified under Rule 23(b)(3).